8772

BOYLE *ET AL.* v. McCOWN *ET AL.*

(81 S. E. 310.)

ELECTIONS. QUALIFICATION OF CANVASSERS. INTEREST IN QUESTIONS OF
PUBLIC POLICY. CONTESTS. PROTEST. EVIDENCE.

1. That one of the county board of canvassers had been employed and
paid to circulate the petition for an election on the question of the
sale of alcoholic liquors, and that another member of the board was
a member of a town council which had employed him, though it was
not shown that he voted to employ and pay him, did not disqualify
either from sitting on the county board of canvassers, since the inter-
est in a case which will disqualify one from acting judicially therein
must be something more than an interest in a question of public
policy.

2. The county board of canvassers being required to meet on the Tues-
day following an election on the question of the sale of alcoholic
liquors to canvass the votes and declare the result, protests and con-
tests should be filed on that day, and where the grounds of objection
and protest, which contestants sought to have considered, where
known or by the exercise of due diligence might have been known to
them in time to present them at such meeting, the board's refusal
of a continuance after adjournment to the following Saturday was
not such a clear abuse of its discretion as would warrant a reversal
of its action; since the Supreme Court will only correct a manifestly
erroneous exercise of it resulting in prejudice to the complaining
party.

3. A protest in an election contest alleging in clear language that the
entire vote of two boxes named should be rejected because the man-
agers allowed all persons who offered, to vote, without requiring
them to produce registration certificates, and proof of payment of
taxes, by reasonable intendment alleged that the result would thereby
be affected and made it a necessary inference that the voters did not
produce their registration certificates and proof of payment of taxes.

4. In a contest of an election on the question of the sale of alcoholic
liquors, testimony of the managers of the election to prove allegations
that voters in certain precincts had been allowed to vote without pro-
ducing their registration certificates or proof of tax payments, and
that the result was thereby affected, was admissible, since such testi-
mony did not contradict the returns, which merely stated the result
after stating the number of votes cast on each side.

Petition for *certiorari* by T. W. Boyle and others against
R. M. McCown and others, State Board of Canvassers.
Petition dismissed. In the original jurisdiction.

*Messrs. C. W. Stoll, Purdy & Bland,* and *Charlton DuRant,* for petitioners.

*Mr. LeRoy Lee,* for respondents.

March 28, 1914.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This action was brought to have this Court review, under its writ of *certiorari,* the action of the State Board of Canvassers, which, by an equally divided vote, affirmed the decision of the county board of canvassers for Williamsburg county, whereby the result of an election held on the question of the sale of alcoholic liquors in said county was declared in favor of the sale thereof. The election was held on Tuesday, August 19, 1913, pursuant to the statute; the county board of canvassers met on the following Tuesday, August 26th, to canvass the vote and declare the result. On the face of the returns sent up by the managers of the election, the total vote was 253 for and 255 against sale. At that meeting, the board announced that all protests must be filed that day. Although persons representing both sides of the controversy were present and represented by counsel, no objection appears to have been made to the adoption of that rule at that time. W. N. Jacobs filed a protest against counting the vote of Muddy Creek precinct (which was 13 for and 25 against sale), and Hebron precinct (which was 9 for and 16 against sale), on the ground that, at the former, the managers allowed all persons, who offered, to vote, without requiring them to produce registration certificates and proof of payment of taxes, and, at the latter, all, who offered, were allowed to vote, without producing proof of payment of taxes. He alleged that, for these reasons, the vote of those precincts was illegal and should not be counted, and that the result shall be declared to be for sale. N. D. Lesesne filed a

protest against counting the Kingstree box (which was 97 for and 70 against sale), on the ground that the manager did not require voters to take the prescribed oath before allowing them to vote. The board then adjourned to meet on Saturday, the 30th, to hear these protests. When the board met, pursuant to adjournment, the attorneys for those opposing the sale of alcoholic liquors objected to the jurisdiction of the board on the ground that two of its members, J. C. Kinder and M. A. Ross were disqualified, because Ross was a member of the town council of Kingstree, which town council had employed Kinder and paid him $100 to circulate the petition praying for the election. They also asked permission to file a protest on the ground that the petition praying for the election was not signed by one-third of the qualified electors of the county, as required by statute. They also asked to be allowed to file a protest against the Kingstree box, on the ground that proof of payment of taxes was not required of the voters. Adhering to the rule adopted and announced at its first meeting, the board overruled the objection and requests, on the ground that they should have been filed on the day of the first meeting. The petitioners then demurred to the protest of Jacobs, on the ground that it was too indefinite to notify contestees of the precise grounds thereof, and the particular votes which it challenged, though it admitted that some legal votes had been cast, and because it did not allege that the result, either at those boxes or in the county, would be changed; and, also, because it was not alleged that any voters failed to exhibit their registration certificates and tax receipts. The demurrer was overruled. Against objection, the board admitted the testimony of the managers of those boxes to prove the grounds of protest. Just here, it may be said that the grounds alleged were clearly proved. Lesesne's protest was called, but it was withdrawn, as being without merit, or abandoned. At any rate, it was not

prosecuted. Later in the afternoon of this day the con- testees of Muddy Creek and Hebron boxes moved for a continuance of the hearing until Tuesday of the next week, and, upon this being refused, they moved that it be continued until Monday, to give them time to get witnesses to prove that the voters at these boxes had produced their registration certificates and tax receipts. This motion was also refused. The board then rejected the vote at Muddy Creek and Hebron' precincts, and declared the result to be for sale by a vote of 231 to 214. As already stated, this decision was affirmed by an equally divided vote of the State Board of Canvassers.

Under the facts stated, neither Ross nor Kinder was disqualified to sit on the board. The interest in a case will disqualify one from acting judicially therein must be something more than an interest in a question of public policy. All intelligent citizens have formed, and perhaps expressed, opinions, more or less decided upon questions of public policy—especially such as the liquor traffic—but certainly that would not disqualify them from acting as managers of an election on such question, or as members of a board charged with the duty of canvassing the votes. So far as Ross is concerned, it does not appear that he even voted in the town council to pay Kinder to circulate the petition. He may have voted against it. On the contrary, it does appear that he voted, though erroneously, against throwing out the vote of Muddy Creek and Hebron precincts. As to Kinder, about all that can be said is that he displayed very bad taste for one occupying his position. Those who are intrusted with the administration of the law should so demean themselves as to avoid even the suspicion of being guilty of improper conduct or of having their judgment swayed by improper influences. While his conduct in circulating the petition for the election, while occupying the office of commissioner of election, was unquestionably

improper, and would naturally cause his acts to be the more carefully scrutinized, when he is charged with abuse of discretion as such commissioner, still his interest in the matter, not being of a personal nature, did not disqualify him.

Perhaps the most important question in this case is: Did the board abuse its discretion in limiting the time for the filing of protests? In deciding that question, all the circumstances must be considered, and a clear case should be made out before this Court would be warranted in reversing the action of the board. The law has vested the discretion in the board, not in the Court, and therefore the Court will not substitute its discretion for that of the board, but will only correct a manifestly erroneous exercise of it, resulting in injury or prejudice to the party complaining.

Now, in the first place, the law requires more than ordinary diligence on the part of those who would contest an election. This is evidenced by the fact that the county board of canvassers are required to meet on the Tuesday following the election to canvass the votes and declare the result. Therefore, it must have been intended that protests and contests should be filed on that day, for clearly it would be too late, after the votes had been canvassed, the result declared, and the records forwarded to the State board. Parties interested in an election have the opportunity of watching at the polls, and of noting illegalities and irregularities in the conduct thereof. Ordinarily, there appears to be no good reason why these could not be brought to the attention of the board of canvassers on the day it meets to canvass the votes. Of course, if any emergencies or extraordinary conditions exist why it cannot be done, that would be matter to be addressed to the discretion of the board on motion for further time. It is clear that the grounds of objection and protest which these petitioners sought to have considered were known,

or by the exercise of due diligence might have been known, to them in ample time to present them to the board at its first meeting. The board should have been informed as early as possible of all grounds of protest or contest, in order that it might the more intelligently have exercised its discretion in fixing the time for the hearing. But it is argued that, as the majority was against sale on the face of the returns, those who favored that side were not called upon to file any protest or contest, until that majority was reversed. A moment's reflection will show that the argument is unsound. That method of procedure would necessitate the hearing of contests by piecemeal; for, if that method had prevailed, the vote of each precinct in the county might have been contested, one at a time, as the majority was changed from one side to the other. Under the circumstances appearing in the record, it cannot be said that the board erred in refusing to entertain protests filed after the time limited by it.

There was no error in overruling the demurrer to the protest of Jacobs. That protest alleged in clear and unmistakable language that the entire vote of the two boxes named should be rejected for the reasons stated, and it was, by reasonable intendment, if not directly, alleged that the result would thereby be affected. The objection that the protest did not allege that the voters failed to exhibit their registration certificates and tax receipts, but only alleged that they were not required to do so, is too refined and technical. The necessary inference from the allegation that they were not required to do so is that they did not produce them.

Nor was there error in admitting the testimony of the managers to prove the facts alleged. The testimony did not contradict the returns, which merely stated the result, after stating the number of votes cast on each side. The returns did not state that the election had been legally conducted, and, if they had, the state-

ment would have been merely the opinion of the managers on a question of law.

From what has already been said, it follows that there was no error in refusing the motion for a continuance to enable the petitioners to get witnesses to rebut the testimony of the managers. In the first place, it was not made to appear that any witness could have been produced, who would have testified to the contrary. In the next place, the petitioners were fully advised by the allegations of the protest and the accompanying affidavits of the managers not only what the issue was, but what the testimony in support thereof would probably be, and they had ample time to subpœna their witnesses and have them present at the hearing. The right of cross-examination was not unreasonably hampered. The questions which were ruled out as irrelevant were clearly so.

The question whether the board erred in counting the vote of S. C. Mitchum and in throwing out two votes from Salter's box need not be considered, as the result was not thereby affected.

The other exceptions to the rulings of the board are so clearly ruled by the previous decisions of this Court that they do not require further discussion.

Petition dismissed.

MR. JUSTICE FRASER concurs in the result.

MR. JUSTICE GAGE did not sit in this case.